JENS OLSEN, Adm'r, etc.

v.

CHARLES KERN ET AL.

1. PURCHASE AT SHERIFF'S SALE—TITLE ACQUIRED.—A purchaser at a sheriff's sale becomes the absolute owner of the goods sold, free from all claims of the execution debtor's creditors.

2. RESALE OF GOODS TO DEBTOR'S WIFE.—A purchaser at a sheriff's sale having acquired a good title, may sell the goods so purchased to any one he pleases, and such purchaser will take a good title. He may sell them to the wife of the execution debtor, and she will take them, freed from all claims of her husband's creditors, if in payment of the same she uses her own separate funds, and not money derived from her husband.

3. HUSBAND AS AGENT OF WIFE.—A wife having purchased goods with her own separate estate, may employ her husband to act as her agent in the control and management of the same, without thereby losing her right of property as against her husband's creditors.

4. FRAUD.—The fact that a purchaser of goods sold under an execution, resold the same to the wife of the execution debtor, and she employed her husband as her agent to control the disposal of the goods, she using her own separate means to pay for the same, and there being no evidence of collusion or improper conduct on the part of the purchasers in bidding at the sheriff's sale, is not such evidence of a fraudulent intent to defeat the husband's creditors as will warrant the court in taking the case from the jury and directing a verdict in favor of such creditors.

5. GOODS SUBSEQUENTLY PURCHASED BY WIFE.—As to goods subsequently purchased by the wife, it was for the jury to say whether or not, under all the circumstances of the case, they belonged to her or her husband, and it was error to withdraw this evidence from the jury.

ERROR to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.    Opinion filed April 10, 1882.

This was a replevin for a stock of goods. The facts were substantially as follows : Prior to January, 1877, Halvor Halvorson, husband of plaintiff's intestate, was engaged in business as a merchant tailor.  On or about January 18th of that year one of his creditors, —— Standish, caused an execution to be levied on his stock in trade, and sold the same at sheriff's sale.  At this sale Jens Olsen and one John Anderson, who were guarantors of the note upon which the judgment was entered, in order to prevent the property from being sacrificed, and to protect themselves, attended the sale and bid off the goods and satisfied the execution.

They subsequently sold the goods to Carrie Halvorson, wife of Halvor Halvorson, the judgment debtor, taking in payment therefor the note of Carrie Halvorson and her husband, guaranteed by one William Harley.  It is claimed, and so testified by Carrie Halvorson, that the consideration for Harley's guaranty was that he had promised to pay her $700 as a part of the purchase-money of a house and lot bought by him from her husband, and in which she had an equitable interest by reason of money furnished by her to her husband out of her separate estate, which had gone into the house.

Upon the sale of the goods by Olsen and Anderson to her, they were removed to a room over the store where Mrs. Halvorson lived. She subsequently replaced them in the store, changed the sign over the door, and employed her husband to carry on the business.

It was shown that Halvorson was insolvent, and there was evidence tending to show that the goods were sold by Olson and Anderson to Mrs. Halvorson, instead of her husband, to prevent their being seized by other creditors of Halvorson. There was also evidence of a sale of some goods by Harley to Halvorson after the sheriff's sale on the Standish execution, and that the same were placed in stock at the Halvorson store, but Mrs. Halvorson testified that her husband was acting for her, and as her agent, and that the goods thus purchased were all gone before the sheriff levied the Ellison execution on the goods replevied.

It was admitted upon the trial that the defendants took the goods under an execution duly authenticated and in force at the time of the levy, issued on a judgment in the Superior Court, January 27, 1877, in favor of Ellison et al. v. Halvor Halvorson for $400, and that the judgment was in full force and unpaid; that Kern was sheriff and Bartells his deputy, and that said judgment was for an indebtedness accruing prior to the sale of the goods in question to Carrie Halvorson, and that some of the goods taken were part of the stock originally sold by Olsen and Anderson, as aforesaid, and all the goods when taken were in the store on Milwaukee avenue, occupied by Halvorson.

At the conclusion of the testimony the court instructed the jury that the evidence did not tend to sustain the plaintiff's case, and directed the jury to find a verdict for the defendant, which they did. The plaintiff moved for a new trial, on the ground that the instruction was erroneous, and because the verdict was contrary to the evidence. The motion was overruled and the plaintiff excepted.

Mr. I. K. BOYESEN, for plaintiff in error; that a married woman may legally employ her husband as her agent to trans-

act business with her property, without subjecting it to her husband's debts, cited Dean v. Bailey, 50 Ill. 481; Primmer v. Clabaugh, 78 Ill. 94; Blood v. Barnes, 79 Ill. 437; Dyer v. Keefer, 51 Ill. 525; McLaurie v. Partlow, 53 Ill. 340; Greenwood v. Jenkle, 68 Ill. 319; Pike v. Baker, 53 Ill. 163; Haight v. McVeagh, 69 Ill. 624; Bongard v. Core, 82 Ill. 19; Cubberly v. Scott, 98 Ill. 38.

Where there is any evidence to sustain a case, it should be left to the jury, and the court can not direct a verdict : Stumps v. Kelley, 22 Ill. 140; Deshler v. Beers, 32 Ill. 368; Winne v. Hammond, 37 Ill. 99; Hutt v. Bruckman, 55 Ill. 444; Hubner v. Feige, 90 Ill. 208.

An instruction directing a verdict is in the nature of a demurrer to the evidence : Phillips v. Dickerson, 85 Ill. 11; Stuart v. Simpson, 1 Wend. 376.

Mr. F. W. Becker, for defendants in error; cited Reeves v. Webster, 71 Ill. 307.

Wilson, P. J. The instruction of the court was clearly unwarranted. It is undisputed that Olsen and Anderson obtained a good title to the goods purchased by them at the sheriff's sale on the Standish execution. By that sale so much of Halvorson's property went to satisfy the claim of a creditor, judicially ascertained and fixed, and by the purchase Olsen and Anderson became the absolute owners of the goods, freed from any and all claims of Halvorson's creditors. They could thenceforth make any disposition of the goods they saw fit. The sale was open and public, and other bidders were present. There is no evidence of any collusion or improper conduct on their part in respect to it; on the contrary, being guarantors on the note upon which the judgment and execution were based, it was their right, and was only an act of common prudence to attend and bid if necessary, in order to prevent the property from being sacrificed and to protect themselves from liability for any deficit.

Having thus become the absolute and undisputed owners of the property, if they saw fit to convey it to Mrs. Halvorson, either for, or without, a consideration, or even with the express and avowed purpose of placing it beyond the reach of her hus-

band's creditors, they had the undoubted right to do so, and such conveyance could not be called in question by his creditors. If the goods in the hands of Olsen and Anderson, as purchasers at the sheriff's sale, were beyond the reach of Halvorson's creditors, upon what principle will it be claimed they are less so in the hands of any third person other than Halvorson, to whom they have transferred them? The case is too plain for argument.

It needs the citation of no authorities to show that a wife may, from means obtained from a source other than her husband, employ her husband to act as her agent in the control and management of the same, without thereby losing her right of property as against the husband's creditors. Here there was no evidence that Mrs. Halvorson purchased the goods in question from means furnished by her husband; on the contrary, it appears affirmatively that the means came from her own separate estate.

From these considerations it is manifest that the assumption contained in the instruction, that there was no evidence tending to sustain the plaintiff's case was unwarranted. Indeed it is difficult to perceive why the evidence did not show a valid title in the plaintiff's intestate, at least as to such portion of the goods seized on the Ellison execution as were conveyed to her by Olsen and Anderson. And as to the goods subsequently purchased and added to the stock, if any remained on hand at the time of the seizure, it was a question of fact whether they were the property of Mrs. Halvorson or her husband, which should have been submitted to the jury.

The judgment is reversed and the cause remanded to the court below for a new trial.

Reversed and remanded.